UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEE MEMORIAL HEALTH SYSTEM,

           Plaintiff,

vs.                                    Case No.  2:04-cv-445-FtM-33DNF

MEDICAL SAVINGS INSURANCE COMPANY,

           Defendant.
_____

### ORDER

This matter comes before the Court on Defendant Medical Savings Insurance Company's October 13, 2004, Amended Motion to Dismiss Counts I, II, IV, VI, and VII of the Complaint. (Doc. #19) On November 9, 2004, Plaintiff Lee Memorial Health System filed a memorandum in opposition to the motion to dismiss. (Doc. #24) Upon review of the motion to dismiss and the memorandum in opposition, the Court denies the Defendant's motion.

**I.  STANDARD OF REVIEW**

In deciding a motion to dismiss, the Court "accept[s] the facts of the complaint as true and view[s] them in the light most favorable to the non-moving party." See Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004)(citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).  A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle it to relief."

75 Acres, LLC v. Miami-Dade County, Fla., 338 F.3d 1288, 1293 (11th Cir. 2003)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The plaintiff is not required by the Federal Rules of Civil Procedure to "set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47. All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must be sufficient to afford the defendant "fair notice of what the claim is and the grounds upon which it rests." United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003)(quoting Conley, 355 U.S. at 47).

## II. FACTS

On September 2, 2004, Lee Memorial Health System filed a complaint (Doc. #1) against Medical Savings Insurance Company, alleging breach of contract. Lee Memorial is a health care authority created by the Florida Legislature to operate, control, and maintain a public hospital and other hospital facilities in Lee County, Florida. (Doc. #1, ¶ 1) Medical Savings is an insurance company authorized to sell health insurance plans in the State of Florida. (Doc. #1, ¶ 3)

Since 2000, Medical Savings has been marketing its insurance plans and soliciting applications from Florida consumers for those plans. (Doc. #1, ¶ 3) In its marketing materials, Medical Savings promised its customers that it would pay 100% of usual and

customary billed charges for professional services, medicines, care, treatment, and supplies. (Doc. #1, ¶ 3) Medical Savings' materials also stated that it would not pay for services or supplies that cost more than what was determined by Medical Savings to be a reasonable and customary charge; however, Medical Savings did not specify in its marketing materials what formula or criteria would be used to determine what amounts were usual and customary. (Doc. #1, ¶ ¶ 3, 8)

Even though Medical Savings' marketing materials did not specify how it would calculate a reasonable and customary charge, its health insurance policies define a reasonable and customary charge as "the most common charge for similar professional services, medicines, or supplies within the area in which the charge is incurred." (Doc. #1, ¶ 15) The most common charge is defined as the amount which would equal or exceed the amounts charged by two-thirds of the providers within a three-digit zip code area in which the service or supply is provided. (Doc. #1, ¶ 15)

Despite this relatively clear criteria, Medical Savings also included policy language that left the determination as to a reasonable and customary charge up to its sole, and potentially arbitrary, discretion. (Doc. #1, ¶ 16) For example, after defining reasonable and customary charge as the most common charge, it qualified the definition of "most common charge" with the

caveat, "so long as those charges are reasonable." (Doc. #1, ¶ 16)

Both Lee Memorial and Medical Savings contracted separately with the National Preferred Provider Network, a New York corporation that enters into agreements with health care providers and insurers. (Doc. # 1, ¶¶ 10, 11) Lee Memorial was the intended third-party beneficiary of Medical Savings' contract with National Preferred, and Medical Savings was the intended third-party beneficiary of Lee Memorial's contract with National Preferred. (Doc. #1, ¶ 12)

As part of its service, National Preferred arranged for Lee Memorial to offer a specific discount off its billed charges to Medical Savings. (Doc. #1, ¶ 10) In exchange for this discount, Medical Savings sent patients to Lee Memorial and agreed to pay Lee Memorial's billings promptly. (Doc. # 1, ¶ 11) Under the National Preferred contract, Medical Savings also agreed that the discount that Lee Memorial offered would be the exclusive method of calculating the amount Medical Savings must pay Lee Memorial for care provided to Medical Savings' policyholders. (Doc. # 1, ¶ 11) Medical Savings further agreed that the discounted amount would constitute Medical Savings' payment in full. (Doc. #1, ¶ 11)

In 2002, Lee Memorial provided professional services, medicines, care, treatment, and supplies to some of Medical Savings' policyholders ("the Patients"). (Doc. #1, ¶ 18) When admitted to Lee Memorial's hospital facilities, the Patients

presented proof that they were insured through Medical Savings and executed an agreement in which they became obligated to pay all charges in full for the professional services Lee Memorial provided. (Doc. #1, ¶ 18)  The Patients also agreed to assign and transfer to Lee Memorial all provider benefits payable and related rights, including causes of action under their insurance policies. (Doc. #1, ¶ 18)

Medical Savings determined that all professional services, medicine, care, treatment, and supplies provided by Lee Memorial were medically necessary to the diagnosis or treatment of each patient's covered injury or illness. (Doc. #1, ¶ 19)  Furthermore, Medical Savings verified that each patient's respective injury or illness was not otherwise excluded or limited under the policy. (Doc. #1, ¶ 19)  Medical Savings approved, authorized, and/or ratified both the admission of the Patients into Lee Memorial's facilities and the treatment provided thereafter. (Doc. #1, ¶ 20)

Lee Memorial forwarded to Medical Savings its reasonable and customary charges for the professional services rendered and awaited payment. (Doc. #1, ¶ 22)  Medical Savings responded by either refusing to pay or issuing and mailing checks to Lee Memorial for only a fraction of the billed charges. (Doc. #1, ¶24)  Each check contained a restrictive endorsement stating that if Lee Memorial negotiated the check, then the amount paid in the check would constitute the full and final payment of all charges. (Doc.

#1, ¶ 24)

National Preferred notified Medical Savings that the checks were in amounts that were substantially less than those agreed upon in the contracts between National Preferred, Medical Savings, and Lee Memorial.  (Doc. #1, ¶ 25)  Medical Savings continued to demand discounts greater than those in the National Preferred contract.  (Doc. #1, ¶ 25)  National Preferred then told Medical Savings that if Medical Savings did not pay the full, agreed-upon amounts, then the Patients would be billed individually for the difference.  (Doc. #1, ¶ 25)

Because Medical Savings' checks were for amounts substantially less than those agreed upon in the National Preferred contract, Lee Memorial refused to negotiate the checks, demanding to be paid in full.  (Doc. #1, ¶ 27)  Medical Savings responded that the billed charges were not reasonable and customary, defining reasonable and customary as the Medicare hospital reimbursement rate increased by 26%.  (Doc. #1, ¶ 27)

After providing this new definition of reasonable and customary to Lee Memorial, Medical Savings contacted the Patients, told them that Lee Memorial's charges were not reasonable and customary, and accused Lee Memorial of overcharging the Patients.  (Doc. #1, ¶ 30)  Medical Savings also encouraged the Patients to accuse Lee Memorial of overcharging them, threaten legal action against Lee Memorial, and refuse to pay the balance of their bill.

(Doc. #1, ¶ 30)  Medical Savings also assured the Patients that it would provide free legal representation in any court proceedings brought against the Patients by Lee Memorial.  (Doc. #1, ¶ 32)

**III.  ANALYSIS**

**Count I (Breach of Implied in Fact Contract)**

Count I of Lee Memorial's complaint alleges a claim for breach of implied in fact contract.[1] (Doc. #1, ¶¶ 33-43) Under Florida law, an implied in fact contract is one "based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." Gem Broad., Inc. v. Minker, 763 So. 2d 1149, 1150 (Fla. 4th DCA 2000)(citing Commerce P'Ship 8098 Ltd. P'Ship v. Equity Contracting Co., Inc., 695 So. 2d 383, 385-86 (Fla. 4th DCA 1997)(internal citation and quotation omitted)).  Because the parties' agreement is not "put into promissory words with sufficient clarity, . . . [the] fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." Id.  A contract that is implied in fact will "rest upon the assent of the parties." Id.

Gem Broadcasting provides examples of contracts implied in fact, such as "where a person performs services at another's

---

[1] Lee Memorial's Complaint and Legal Memorandum Opposing Defendant's Amended Motion to Dismiss occasionally sets forth different arguments in support of a given claim.  Where one argument standing alone is dispositive for the purposes of this order, the Court does not address each argument that Lee Memorial has made in support of its claims.

7

request, or 'where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances' fairly raising the presumption that the parties understood and intended that compensation was to be paid." Id. at 1151 (citation omitted). In such cases, "the law implies the promise to pay a reasonable amount for the services." Id. (citation omitted).

In this suit, Lee Memorial claims that a contract implied in fact arose from the National Preferred contracts and that the parties' actions demonstrated the requisite assent. (Doc. 24, p. 7) Medical Savings argues that the existence of the National Preferred contracts are express contracts that preclude Lee Memorial's entitlement to equitable relief based on implied in fact contract. (Doc. #17, p. 5) Medical Savings' argument fails because at this stage in the proceedings there has been no determination whether an express contract exists between the parties; thus, it is premature to say that the existence of an unproven contract precludes Lee Memorial's claim. Lee Memorial alleges that Medical Savings sent the Patients to Lee Memorial, Lee Memorial provided care and treatment to the Patients, and Lee Memorial prepared bills based upon a specific discount and sent them to Medical Savings. (Doc. #1, ¶¶ 18-22) Taking Lee Memorial's factual assertions as true, the Court concludes that Lee Memorial has alleged facts sufficient to state a claim for breach of an implied in fact contract; therefore, Medical

Savings' motion to dismiss is denied as to Count I.

### Count II (Breach of Implied in Law Contract)

Count II alleges a breach of implied in law contract. (Doc. #1, ¶¶ 44-53)  In contrast to a contract implied in fact, which requires assent, a contract implied in law "is a legal fiction, an obligation created by the law without regard to the parties' expression of assent by their words or conduct."  Magwood v. Tate, 835 So. 2d 1241, 1243 (Fla. 4th DCA 2003)(quoting Commerce P'Ship, 695 So. 2d at 386).

Implied in law contracts create an obligation among the parties that is "imposed by law to prevent unjust enrichment."  Rabon v. Inn of Lake City, Inc., 693 So. 2d 1126, 1131 (Fla. 1st DCA 1997)(quoting Rite-Way Painting & Plastering, Inc. v. Tetor, 582 So. 2d 15, 17 (Fla. 2d DCA 1991)).  To establish a cause of action for breach of a contract implied in law, a plaintiff must show "a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof."  Id.; Commerce P'Ship, 695 So. 2d at 386.

Here, Lee Memorial conferred a benefit upon Medical Savings when it provided care and treatment for the Patients for a discounted fee. (Doc. #1, ¶ 18)  Medical Savings received this benefit and subsequently retained it without paying the billed amount. (Doc. #1, ¶¶ 19-25)  Lee Memorial contends that there is no adequate remedy at

9

law to recover for the wrongfully retained benefit.  (Doc. #24, pp. 10-11)  Based on these facts, the Court concludes that Lee Memorial's allegations are sufficient to state a claim for breach of contract implied in law, and that Medical Savings' motion to dismiss Count II must be denied.

### COUNT IV (Breach of Common Law Implied Covenant of Good Faith, Fair Dealing, and Reasonableness)

Count IV alleges breach of implied covenants of good faith, fair dealing, and reasonableness.  (Doc. # 1, ¶¶ 65-75) "Under Florida law, the implied contract of good faith and fair dealing is a part of every contract." Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999)(citing County of Brevard v. Miorelli Eng'q, Inc., 703 So. 2d 1049, 1050 (Fla. 1997)).  However, in the absence of "an allegation that an express term of the contract has been breached," a claim for breach of the implied covenant of good faith, fair dealing, and reasonableness cannot be maintained. Insurance Concepts & Design, Inc. v. Healthplan Servs., Inc., 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001); see also Burger King Corp., 169 F.3d at 1318 (Plaintiff's failure to identify an express contractual provision that had been breached "doom[ed]" his claim for breach of the implied covenant of good faith); Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1314 (11th Cir. 1998)(noting that the requirement of good faith "does not exist 'in the air'" but "attaches only to the performance of a specific contractual obligation").

In this case, Lee Memorial contends that Medical Savings

10

breached an express agreement to pay the discounted rate in the National Preferred contract. (Doc. 24, p. 15) Medical Savings contends that this claim is preempted by Section 624.155, Florida Statutes and that, alternatively, it is not an independent cause of action. (Doc. #17, pg. 6-8)

As to Medical Savings' statutory argument, the statute clearly states that "[t]he civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state." Fla. Stat. ch. 624.155(8)(2005). Because the implied covenant of good faith exists as a common law claim, the statute does not preempt this cause of action. Lee Memorial's claim for breach of the implied covenant of good faith is not precluded by the fact that it was pled separately from Count III. Where there is a breach of the express terms of an agreement between the parties, a plaintiff may bring a separate claim for breach of implied covenant of good faith. See Nautica Int'l v. Intermarine USA, L.P., 5 F. Supp. 2d 1333, 1340-41 (S.D. Fla. 1998)(citing Burger King Corp. v. Holder, 844 F. Supp. 1528, 1530 (S.D. Fla. 1993)). Furthermore, Rule 8(e)(2), Fed. R. Civ. P., permits a plaintiff to choose whether to assert two or more claims in one count or in separate counts. As a practical matter, while the court agrees that Lee Memorial ought to have included Count IV along with Count III, there is no prejudice in leaving it as a separate count. Accordingly, Medical Savings' motion to dismiss

11

Count IV is denied.

## Count VI (Promissory Estoppel)

Count VI alleges a claim for promissory estoppel. (Doc. #1, ¶¶ 84-92). In Florida, a plaintiff who claims promissory estoppel must allege

> (1) that the plaintiff detrimentally relied on a promise made by the defendant, (2) that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of the plaintiff or a third party, and (3) that injustice can be avoided only by enforcement of the promise against the defendant.

W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So. 2d 297, 302 (Fla. 1st DCA 1999) (citing W.R. Grace & Co. v. Geodata Servs., Inc., 547 So. 2d 919, 924 (Fla. 1989)).

In this case, Lee Memorial's promissory estoppel claim is predicated upon its justifiable reliance on Medical Savings' promise to honor and pay billed charges for care and treatment rendered to the Patients. (Doc. #1, ¶¶ 88-90) Medical Savings argues that Lee Memorial has an adequate remedy at law since there is an express contract in place; therefore, the equitable action for promissory estoppel should be dismissed. (Doc. #17, p. 8) The Court disagrees with the Medical Savings' contention.

Florida law recognizes that claims for breach of contract and promissory estoppel "are alternatives for each other." Doe v. Univision Television Group, Inc., 717 So. 2d 63, 65 (Fla. 3d DCA 1998). "Until an express contract is proven, a motion to dismiss a claim for promissory estoppel . . . is premature." Williams v. Bear

12

Stearns & Co., 725 So. 2d 397, 400 (Fla. 5th DCA 1998); see also Univision Television Group, 717 So. 2d at 65. A claim for promissory is permissible "where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." Doe, 717 So. 2d at 65. At this stage in the proceedings, an express contract cannot be said to have been proven; therefore, under the federal rules, alternative pleading is allowed. Medical Savings' motion to dismiss Count VI is therefore denied.

### Count VII (Breach of National Preferred Contract)

Count VII alleges a claim for Medical Savings' breach of the National Preferred contract between Medical Savings and Lee Memorial. (Doc. # 1, ¶¶ 93-102) Lee Memorial bases this claim on the interlocking and co-dependent nature of the contracts between Lee Memorial and National Preferred and Medical Savings and National Preferred. Lee Memorial claims that by their nature, these interlocking agreements create an enforceable contract between Lee Memorial and Medical Savings. Medical Savings, on the other hand, argues that it was not a party to National Preferred's agreement with Lee Memorial and thus could not be in breach of it since there is no privity. (Doc. # 17, p. 10)

While it is generally true that only parties to a contract may sue for its breach, there is an exception for non-parties who are intended third-party beneficiaries of the contract. Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So. 2d 1028, 1030-31

13

(Fla. 4th DCA 1994); Warren v. Monahan Beaches Jewelry Ctr., Inc., 548 So. 2d 870, 872 (Fla. 1st DCA 1989). A third-party beneficiary may sue in "those situations where the provisions of the contract clearly show an intention primarily and directly to benefit the individual bringing suit or to a class of persons to which he claims to belong. . ." Security Mut. Cas. Co. v. Pacura, 402 So. 2d 1266, 1267 (Fla. 3d DCA 1981).

The Court concludes that the allegations in the complaint are sufficient to establish that Lee Memorial was an intended third-party beneficiary to Medical Savings' National Preferred contract. Lee Memorial contracted with National Preferred with the hopes of attaining higher patient volume and more prompt payment from insurers such as Medical Savings. (Doc. #1, ¶ 10) Medical Savings contracted with National Preferred with the hopes of attaining better billing rates from providers such as Lee Memorial. (Doc. #1, ¶ 11) Accepting all factual allegations in the complaint as true, it appears to the Court that both of the parties in this case contracted with National Preferred for the purpose of benefitting not only themselves, but also each other. Lee Memorial has met its burden of demonstrating that it was an intended third-party beneficiary of Medical Savings' contract with National Preferred; thus, Medical Savings' motion to dismiss Count VII is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

14

(1) Defendant Medical Savings Insurance Company's Amended Motion to Dismiss Counts I, II, IV, VI, and VII of the Complaint (Doc. #1) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Fort Myers, Florida, this 20th day of September, 2005.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of record